# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| TRACY HALL, individually and on behalf of all others similarly situated, | |
| *Plaintiff*, | Case No. 1:22-cv-00024 |
| vs. | JURY TRIAL DEMANDED |
| WALGREENS BOOTS ALLIANCE, INC. and WALGREEN CO., | |
| *Defendants* | |

**CLASS ACTION COMPLAINT**

**Table of Contents**

| | | | |
|---|---|---|---|
| I. | Introduction. | | 1 |
| II. | Parties. | | 1 |
| III. | Jurisdiction and Venue. | | 2 |
| IV. | Facts. | | 2 |
| | A. | Defendants make, market, and sell Walgreens products prominently labeled "Non-Drowsy." | 2 |
| | B. | The Non-Drowsy Walgreens Products cause drowsiness. | 4 |
| | C. | Defendants' Non-Drowsy representations are misleading to reasonable consumers. | 6 |
| | D. | Plaintiff was misled by Defendants' misrepresentations | 8 |
| | E. | Class Action Allegations. | 9 |
| V. | Claims. | | 11 |
| VI. | Jury Demand. | | 16 |
| VII. | Prayer for Relief. | | 16 |

**I.      Introduction.**

1.      Defendants make, sell, and market "Walgreens" over-the-counter cough medicine, including generic Walgreens versions of brands like Robitussin and DayQuil. Like the branded versions, many of these medicines contain the active ingredient Dextromethorphan Hydrobromide ("DXM"). Many such Walgreens products state prominently on the front of their label that they are "Non-Drowsy." [1]

2.      By prominently labeling these products as "Non-Drowsy," Defendants led Plaintiff and other reasonable consumers to believe that the Non-Drowsy Walgreens Products do not cause drowsiness, and that drowsiness is not a side effect of those products. But the truth is that products containing DXM—and thus the Non-Drowsy Walgreens Products—do cause drowsiness, and that drowsiness is a common side effect of DXM.

3.      In this way, Defendants misled Plaintiff and other reasonable consumers about the effects of the Non-Drowsy Walgreens Products.

4.      Defendants' misrepresentations allowed them to overcharge Plaintiff and other consumers for the Non-Drowsy Walgreens Products.

**II.     Parties.**

5.      Plaintiff Tracy Hall is a citizen of Washington (domiciled in Blaine, Washington). The proposed class includes citizens of every state within the United States.

6.      Defendant Walgreens Boots Alliance, Inc. is a citizen of Illinois and Delaware. Its principal place of business is at 108 Wilmot Road, Deerfield, Illinois, 60015. It is incorporated in Delaware.

---

[1] Throughout this Complaint, Walgreens products containing DXM that state on their label that they are "Non-Drowsy" are called "Non-Drowsy Walgreens Products."

1

7. Defendant Walgreen Co. is a citizen of Illinois. Its principal place of business is at 108 Wilmot Road, Deerfield, IL 60015. It is incorporated in Illinois.

### III. Jurisdiction and Venue.

8. This Court has subject matter jurisdiction under 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and the matter is a class action in which one or more members of the proposed class are citizens of a state different from the Defendants.

9. The Court has personal jurisdiction over Defendants because Defendants' principal place of business is in Illinois.

10. Venue is proper under 28 U.S.C. § 1391(b)(1) and 28 U.S.C. § 1391(d) because Defendants would be subject to personal jurisdiction in this District if this District were a separate state, given that Defendants' principal place of business is in this district.

### IV. Facts.

**A. Defendants make, market, and sell Walgreens products prominently labeled "Non-Drowsy."**

11. Walgreens Boots Alliance makes, markets and sells the Non-Drowsy Walgreens Products and is therefore liable for them. In its 10-K, Walgreens Boots Alliance states: "The Company provides customers with convenient, omni-channel access through its portfolio of retail and business brands, which includes Walgreens [brand] . . . . The Company's global brands portfolio is enhanced by its in-house product research and development capabilities . . . Additionally, through its strategic partnerships, the Company will be able to dramatically enhance Walgreens Boots Alliance's marketing effectiveness."

12. In addition, or in the alternative, Walgreen Co. makes, markets and sells the Non-Drowsy Walgreens Products and is therefore liable for them. According to Walgreen Co.'s

representations in a recent lawsuit, Walgreen Co. is a wholly-owned subsidiary of Walgreens Boots Alliance that "owns and operates . . . licensed pharmacy locations." Mot. to Dismiss, *J.R. v. Walgreens Boots Alliance, Inc.*, No. 2:19-cv-00446-DCN, Dkt. 117 at 6 (October 18, 2019).

13. The front label of each Non-Drowsy Walgreens Product prominently states that the product is "Non-Drowsy." For example:





14. These representations are materially the same across Non-Drowsy Walgreens Products.

15. The Non-Drowsy Walgreens Products do not disclose anywhere on their packaging that they do or can cause drowsiness, or that drowsiness is a side effect.

16. Based on the prominent "Non-Drowsy" label included on the face of each product, a reasonable consumer would believe that the products do not cause drowsiness, and that drowsiness is not a side-effect of the products.

17. Defendants labeled the products this way because they intended consumers to rely on the labels and to believe that the products would not cause drowsiness, so that consumers would buy more products or pay more for them.

**B.    The Non-Drowsy Walgreens Products cause drowsiness.**

18. In truth, products containing DXM—like the Non-Drowsy Walgreens Products—do cause drowsiness, and drowsiness is a documented side effect of DXM. [2]

---

[2] Dextromethorphan: MedlinePlus Drug Information, NIH National Library of Medicine, https://medlineplus.gov/druginfo/meds/a682492.html (listing drowsiness as a side effect)

19. In fact, drowsiness is a common side effect at the recommended dosages. For example, one study found that "[s]omnolence is a common side effect of centrally acting antitussive drugs" like dextromethorphan, and that 10.4% of users of products containing dextromethorphan develop drowsiness within three days of starting treatment with DXM cough medicine. [3,4] The "cases of intense somnolence" were "related only to dextromethorphan" and not to the other drug studied. And patients in this clinical study were given an even smaller dosage of DXM (15 mg three times a day) than the recommended dose found in many Walgreens products. [5]

20. The FDA's adverse event report database confirms that "sedation" is one of the most frequently-cited side effects of dextromethorphan-containing products. [6]

21. For this reason, the Federal Aviation Administration prohibits pilots from flying after ingesting medicines that contain "dextromethorphan": [7]

| | | | | |
|---|---|---|---|---|
| Cough | Cough/cold products | Coricidin (allowed if no chlorpheniramine)<br><br>guaifenesin (found in Mucinex and Robitussin)<br>Mucinex fast-max severe congestion and cough (liquid)<br><br>Identify combo vs isolated | dextromethorphan (Delsym)<br><br>Dayquil (contains dextromethorphan)<br><br>Most "night-time" or "PM" medications contain a sedating antihistamine:<br>- Coricidin HBP cough & cold (contains chlorpheniramine)<br>- Nyquil (contains doxylamine) | Most cough medications are safe for flight, but caution for combination products with sedating antihistamines. **If the label states PM (for nighttime use) or DM (containing dextromethorphan), you should not fly for at least 5 half-lives after the last dose (see above).** |

---

[3] E. Catena and L. Daffonchio, "Efficacy and Tolerability of Levodropropizine in Adult Patients with Non-productive Cough, Comparison with Dextromethorphan," 10 Pulmonary Pharmacology & Therapeutics 89-96 (1997).
[4] The study reports this side effect as "somnolence." Somnolence means "the quality or state of being drowsy." Merriam Webster Dictionary, https://www.merriam-webster.com/dictionary/somnolence
[5] For example: Wal-Tussin DM Liquid contains 20mg of DXM per 10ml of liquid cough syrup and the recommended dosage for adults and children 12 and over is 10ml every 4 hours.
[6] Sedation is associated with drowsiness. *See* IV/Monitored Sedation, American Society of Anesthesiologists, https://www.asahq.org/madeforthismoment/anesthesia-101/types-of-anesthesia/ivmonitored-sedation/ (even "minimal" sedation means that "you'll feel drowsy")
[7] https://www.faa.gov/licenses_certificates/medical_certification/media/OTCMedicationsforPilots.pdf

5

**C.	Defendants' Non-Drowsy representations are misleading to reasonable consumers.**

22.	The Food and Drug Administration prohibits drug labeling that is "false or misleading." 21 C.F.R. § 201.6. It is misleading to label a product "Non-Drowsy" when it does cause drowsiness, or if drowsiness is a known side effect of one of its active ingredients.

23.	Based on the fact that Defendants labeled the Non-Drowsy Walgreens Products as "Non-Drowsy," a reasonable consumer would expect that those products do not cause drowsiness. Similarly, a reasonable consumer would expect that drowsiness is not a side effect of the products (much less a common side effect). Indeed, according to Consumer Reports, "'Non-drowsy' is code for antihistamines and other medications that don't make you sleepy." [8] This is the plain meaning of "non-drowsy," which means "not causing or accompanied by drowsiness." [9]

24.	Walgreens' labeling does not contain any language that a reasonable consumer would understand to qualify these representations, or that would otherwise put a reasonable consumer on notice of the fact that the Non-Drowsy Walgreens Products actually cause drowsiness.

25.	Unlike Defendants, some other drug makers do not falsely claim that DXM-products are non-drowsy. For example, DXM is an active ingredient in Mucinex DM, sold by Reckitt. But the Mucinex label does not claim that Mucinex DM is non-drowsy, because this is not the truth.

---

[8] How to read over the counter (OTC) drug labels, Consumer Reports, https://www.consumerreports.org/cro/2014/04/how-to-read-over-the-counter-drug-labels/index.htm
[9] https://www.merriam-webster.com/medical/nondrowsy



26. So Defendants could have simply omitted the false and misleading statement, "Non-Drowsy," from their products.

27. Or, if Defendants wanted to say something to indicate that a Non-Drowsy Walgreens Product might cause *less* drowsiness than another product, they could have made a truthful statement to this effect, as other drug makers do.

28. For example, Dramamine contains an active ingredient that causes drowsiness, Dimenhydrinate. Dramamine also sells a "less drowsy" version that contains a different active ingredient, Meclizine, which causes less drowsiness. The front label of Dramamine Less Drowsy prominently displays that it is "less drowsy":

7



29. Whether or not an over-the-counter drug causes drowsiness is material to a reasonable customer. In certain situations, consumers prefer over-the-counter drugs that will not make them drowsy to products that may make them drowsy. For example, all else equal, a reasonable consumer would prefer to take a drug that does not cause drowsiness to one that does cause drowsiness during the day (or any periods of time when they plan to be awake). As a second example, if a consumer is planning to engage in activities that require them to be alert (like work), or during which they would prefer to be alert, that consumer would prefer to take a drug that does not cause drowsiness to one that does. Indeed, in many situations, taking a drug that does or can cause drowsiness can be dangerous. For example, taking a drug that causes drowsiness while driving is dangerous.

**D. Plaintiff was misled by Defendants' misrepresentations**

30. In or around 2019, Plaintiff bought a Non-Drowsy Walgreens Product (Wal-Tussin DM) at a Walgreens store in Bellingham, Washington. The package said "Non-Drowsy" prominently on the label, and Plaintiff read and relied on this statement when purchasing the

8

product. But when Plaintiff took the Walgreens medication, she became unexpectedly drowsy. She would not have bought the Walgreens medication had she known that the product did, in fact, cause drowsiness, and that drowsiness was a known side-effect of the product.

31. Plaintiff would purchase Non-Drowsy Walgreens Products again if they were actually "Non-Drowsy" (i.e., if the product was sold as advertised). Plaintiff, however, faces an imminent threat of harm because she will not be able to rely on the labels in the future, and thus will not be able to purchase the products.

### E. Class Action Allegations.

32. Plaintiff brings certain claims on behalf of the proposed class of: all persons who purchased a Non-Drowsy Walgreens Product in the United States during the applicable statute of limitations (the "**Nationwide Class**").

33. For other claims, Plaintiff brings those claims on behalf of a subclass of consumers who live in the identified states (the "**Consumer Protection Subclass**").

34. For certain claims, Plaintiff brings those claims on behalf of a subclass of consumers who, like Plaintiff, purchased Non-Drowsy Walgreens Products in Washington (the "**Washington Subclass**").

35. The following people are excluded from the Class and the Subclasses: (1) any Judge or Magistrate Judge presiding over this action and the members of their family; (2) Defendants, Defendants' subsidiaries, parents, successors, predecessors, and any entity in which the Defendants or their parents have a controlling interest and their current employees, officers and directors; (3) persons who properly execute and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendants' counsel, and their experts and

consultants; and (6) the legal representatives, successors, and assigns of any such excluded persons.

### *Numerosity*

36. The proposed class contains members so numerous that separate joinder of each member of the class is impractical. Based on the pervasive distribution of Non-Drowsy Walgreens Products, there are millions of proposed class members.

### *Commonality*

37. There are questions of law and fact common to the proposed class. Common questions of law and fact include, without limitation:

- Whether the Non-Drowsy Walgreens Products cause drowsiness;

- Whether Defendants' labeling of the Non-Drowsy Walgreens Products as "Non-Drowsy" is deceptive and misleading;

- Whether Defendants violated state consumer protection statutes;

- Whether Defendants committed a breach of express warranty; and,

- Damages needed to reasonably compensate Plaintiff and the proposed class.

### *Typicality*

38. Plaintiff's claims are typical of the proposed class. Like the proposed class, Plaintiff purchased Non-Drowsy Walgreens Products.

### *Predominance and Superiority*

39. The prosecution of separate actions by individual members of the proposed class would create a risk of inconsistent or varying adjudication with respect to individual members, which would establish incompatible standards for the parties opposing the class. For example,

individual adjudication would create a risk that breach of the same express warranty is found for some proposed class members, but not others.

40. Common questions of law and fact predominate over any questions affecting only individual members of the proposed class. These common legal and factual questions arise from central issues which do not vary from class member to class member, and which may be determined without reference to the individual circumstances of any particular class member. For example, a core liability question is common: whether Defendants' "Non-Drowsy" labeling is false and misleading.

41. A class action is superior to all other available methods for the fair and efficient adjudication of this litigation because individual litigation of each claim is impractical. It would be unduly burdensome to have individual litigation of millions of individual claims in separate lawsuits, every one of which would present the issues presented in this lawsuit.

**V.      Claims.**

### Count I: Violations of State Consumer Protection Acts
**(on behalf of Plaintiff and the Consumer Protection Subclass)**

42. Plaintiff incorporates by reference each and every factual allegation set forth above.

43. This count is brought on behalf of Plaintiff and the Consumer Protection Subclass for violations of the following state consumer protection statutes:

| State | Statute |
|---|---|
| New York | N.Y. Gen. Bus. Law § 349, and the following. |
| Washington, D.C. | D.C. Code § 28-3901, and the following. |
| Massachusetts | Mass. Gen Laws Ann. Ch. 93A, and the following. |
| Missouri | Mo. Rev. Stat. § 407, and the following. |

11

| | |
|---|---|
| Rhode Island | R.I. Gen. Laws § 6-13.1- 5.2(B), and the following. |
| Vermont | 9 V.S.A. § 2451, and the following. |
| Washington | Wash. Rev. Code § 19.86.010, and the following. |

44. Each of these statutes is materially similar. Each broadly prohibits deceptive conduct in connection with the sale of goods to consumers. No state requires reliance, knowledge or intent. Instead, it is sufficient that the deceptive conduct is misleading to reasonable consumers and that the conduct proximately caused harm. *See Allen v. ConAgra Foods, Inc.*, 331 F.R.D. 641, 666 (N.D. Cal. 2019) (finding that these states can be grouped into a certifiable subclass).

45. Defendants' conduct, including the false labeling of the Non-Drowsy Walgreens Products and sale of those products to Plaintiff and class members, violates each statute's prohibitions.

46. The sale of Non-Drowsy Walgreens Products is the sale of goods to consumers. Hundreds of thousands (or potentially millions) of consumers purchase Non-Drowsy Walgreens Products.

47. As alleged in detail above, Defendants' misrepresentations were misleading to Plaintiff and to reasonable consumers.

48. For Mass. Gen Laws Ann. Ch. 93A, Plaintiff mailed a notice and demand letter to Defendants' headquarters on December 27, 2021. Upon the expiration of any governing statutory notice period, Plaintiff and the class seek all available injunctive or monetary relief.

49. Plaintiff and class members were injured as a direct and proximate result of Defendants' conduct, and this conduct was a substantial factor in causing them harm, because (a) they would not have purchased Non-Drowsy Walgreens Products if they had known that they

12

cause drowsiness, or (b) they overpaid for the products because they are sold at a price premium due to Defendants' misrepresentations.

**Count II: Violation of the Washington Consumer Protection Act, Wash. Rev. Code ch. 19.86**
**(on behalf of Plaintiff and the Washington Subclass)**

50. Plaintiff incorporates each and every factual allegation set forth above.

51. Plaintiff brings this cause of action individually and for the Washington Subclass, seeking reasonable attorney fees, treble damages, and other relief.

52. Plaintiff and the Subclass purchased Non-Drowsy Walgreens Products in Washington.

53. Defendants' false and misleading "Non-Drowsy" claims had the capacity to deceive a substantial portion of the public into believing that the Non-Drowsy Walgreens Products do not cause drowsiness.

54. Defendants' "Non-Drowsy" misrepresentations occurred in the conduct of trade or commerce affecting the people of the State of Washington.

55. Defendants' misrepresentations impact the public interest because they were committed in the course of the Defendants' business, were committed repeatedly before the Plaintiff ever purchased a Non-Drowsy Walgreens Product, as part of a pattern of misrepresenting whether the Non-Drowsy Walgreens Products cause drowsiness, which affected hundreds of thousands (or potentially millions) of other Washington residents. Moreover, there is a substantial potential that Defendants' wrongful conduct will continue into the future.

56. Defendants' "Non-Drowsy" misrepresentations were material. As alleged in detail above, these "Non-Drowsy" misrepresentations were important to consumers and affected their

choice to purchase Non-Drowsy Walgreens Products. And, as alleged in detail above, these misrepresentations were likely to mislead reasonable consumers.

57. Defendants' misrepresentations were willful and knowing. Because Defendants make and sell the Non-Drowsy Walgreens Products, Defendants researched the known and common side effects of DXM. This is diligence that a large company like Walgreens would do when selling a drug. As a result, Defendants know that DXM causes drowsiness. Furthermore, Defendants control their labeling, knowingly put on the "Non-Drowsy" representations, and know the plain meaning of "Non-Drowsy." Finally, it is standard practice in the industry to test labeling with consumers, and Defendants' testing would confirm that "Non-Drowsy" is misleading.

58. Plaintiff and Subclass members were injured as a direct and proximate result of Defendants' conduct, and this conduct was a substantial factor in causing them harm, because they did not get what they paid for (cough syrup that was truthfully "Non-Drowsy") and they overpaid for the products because the products are sold at a price premium due to Defendants' misrepresentations.

59. Plaintiff and the Subclass seek treble damages, an injunction, reasonable attorney fees, expenses, and all other available relief. *See* Wash. Rev. Code ch. 19.86.090.

### Count III: Breach of Express Warranty
**(on behalf of Plaintiff and a Nationwide Class)**

60. Plaintiff incorporates by reference each and every factual allegation set forth above.

61. Plaintiff brings this count individually and for the Nationwide Class.

62. Defendants, as the designers, manufacturers, marketers, distributors, suppliers, and/or sellers of the Non-Drowsy Walgreens Products, issued material, written warranties by

14

representing that the products were "Non-Drowsy." This was an affirmation of fact about the products (i.e., a description of the effects of the ingredients) and a promise relating to the goods.

63. This warranty was part of the basis of the bargain and Plaintiff and members of the Nationwide Class relied on this warranty.

64. In fact, the Non-Drowsy Walgreens Products do not conform to the above-referenced representation because, as alleged in detail above, they cause drowsiness. Thus, the warranty was breached.

65. Plaintiff provided Defendants with notice of this breach of warranty, by mailing a notice letter to Defendants' headquarters, on December 27, 2021.

66. Plaintiff and the Nationwide Class were injured as a direct and proximate result of Defendants' breach, and this breach was a substantial factor in causing harm, because (a) they would not have purchased Non-Drowsy Walgreens Products if they had known that the products cause drowsiness, or (b) they overpaid for the products because they are sold at a price premium due to the warranty.

### Count IV: Breach of the Magnuson-Moss Warranty Act
### (on behalf of Plaintiff and the Nationwide Class)

67. Plaintiff incorporates by reference each and every factual allegation set forth above.

68. Plaintiff brings this count individually and for the Nationwide Class.

69. Defendants supplied Non-Drowsy Walgreens Products to consumers and Non-Drowsy Walgreens Products are consumer products.

70. Defendants issued material, written warranties by representing that the products were "Non-Drowsy." This was an affirmation of fact about the material in the products (i.e., a description of the effects of the ingredients) and a promise relating to the goods.

71. Defendants represented that the material inside the Non-Drowsy Walgreens Products (the ingredients) would meet a specified level of performance over a specified period of time. Defendants represented that, when taken at the recommended dosage, the product ingredients would not cause drowsiness and drowsiness is not a side-effect.

72. This warranty was part of the basis of the bargain and Plaintiff and members of the Nationwide Class relied on this warranty.

73. In fact, the Non-Drowsy Walgreens Products do not conform to the above-referenced representation because, as alleged in detail above, they cause drowsiness. Thus, the warranty was breached.

74. Plaintiff provided Defendants with notice of this breach of warranty, by mailing a notice letter to Defendants' headquarters, on December 27, 2021.

75. Plaintiff and the Nationwide Class were injured as a direct and proximate result of Defendants' breach, and this breach was a substantial factor in causing harm, because (a) they would not have purchased Non-Drowsy Walgreens Products if they had known that the products cause drowsiness, or (b) they overpaid for the products because the products are sold at a price premium due to the warranty.

## VI. Jury Demand.

76. Plaintiff demands a jury trial on all issues so triable.

## VII. Prayer for Relief.

77. Plaintiff seeks the following relief individually and for the proposed class and subclasses:

- An order certifying the asserted claims, or issues raised, as a class action;
- A judgment in favor of Plaintiff and the proposed class;

- Damages, treble damages, and punitive damages where applicable;

- Restitution;

- Disgorgement, and other just equitable relief;

- Pre- and post-judgment interest;

- An injunction prohibiting Defendants' deceptive conduct, as allowed by law;

- Reasonable attorneys' fees and costs, as allowed by law;

- Any additional relief that the Court deems reasonable and just.

Date: January 3, 2022                     Respectfully submitted,

                                              By:    /s/ *Jonas Jacobson*
                                                      Jonas Jacobson

                                                      DOVEL & LUNER, LLP
                                                      Jonas Jacobson (*pro hac vice* forthcoming)
                                                      Simon Franzini (*pro hac vice* forthcoming)
                                                      201 Santa Monica Blvd., Suite 600
                                                      Santa Monica, CA 90401
                                                      (310) 656-7066
                                                      jonas@dovel.com
                                                      simon@dovel.com

                                                      Counsel for Plaintiff