**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| TRACY HALL, individually and on behalf of all others similarly situated, | |
| *Plaintiff*, | Case No. 1:22-cv-00024 |
| vs. | Honorable Martha M. Pacold |
| WALGREENS BOOTS ALLIANCE, INC. and WALGREEN CO., | **JURY TRIAL DEMANDED** |
| *Defendants.* | |

<u>**Plaintiff's Memorandum of Law in Opposition**</u>
<u>**to Defendant's Motion to Dismiss**</u>

## **Table of Contents**

I.     The FDC Act does not preempt Plaintiff's claims. ...........................................................................1

     A.     The FDC Act does not preempt state-law claims challenging drug labels for including voluntary deceptive statements, unless the FDA has expressly approved the particular statement being challenged. ........................................................2

     B.     Ms. Hall's claims challenge Defendants' labels for including the voluntary deceptive statement "Non-Drowsy"—not for failing to include a warning. ................4

     C.     The FDA has not expressly approved the particular "Non-Drowsy" statement. ........................................................................................................6

II.    Ms. Hall can bring deceptive advertising claims for out-of-state class members. ..................10

III.   Because Defendants' preemption defense fails, the safe harbor does not apply. ....................11

IV.   Ms. Hall plausibly alleges that Defendants violate the consumer protection laws of Washington (as well as other states with substantially similar laws). ..........................................11

     A.     The "Non-Drowsy" claim is deceptive. ............................................................11

     B.     Defendants' deceptive practice caused a compensable injury ........................13

V.    Ms. Hall plausibly alleges a breach of an express warranty and a violation of the Magnuson-Moss Act. ..............................................................................................14

VI.   Ms. Hall has standing to pursue an injunction. ..............................................................14

i

## Table of Authorities

**Cases**

*Allen v. ConAgra Foods, Inc.*
  331 F.R.D. 641 (N.D. Cal. 2019) ..............................................................................11

*Astiana v. Hain Celestial Grp., Inc.,*
  783 F.3d 753 (9th Cir. 2015) ............................................................................... 4, 7

*Ault v. J.M. Smucker Co.,*
  2014 U.S. Dist. LEXIS 67118 (S.D.N.Y. May 15, 2014) ..................................... 4, 7

*Bell v. Publix Super Mkts., Inc.,*
  982 F.3d 468 (7th Cir. 2020) ........................................................................... passim

*Birdsong v. Apple, Inc.,*
  590 F.3d 955 (9th Cir. 2009) ..................................................................................14

*Bourbia v. S.C. Johnson & Son, Inc.,*
  375 F. Supp. 3d 454 (S.D.N.Y. 2019) ....................................................................11

*Bowling v. Johnson & Johnson,*
  65 F. Supp. 3d 371 (S.D.N.Y. 2014) .........................................................................9

*Canale v. Colgate-Palmolive Co.,*
  258 F. Supp. 3d 312 (S.D.N.Y. 2017) .................................................................. 7, 9

*Catilina Nominees Proprietary Ltd. v. Stericycle, Inc.,*
  2021 U.S. Dist. LEXIS 213514 (N.D. Ill. Nov. 4, 2021) ........................................13

*Chevron, U.S.A., Inc. v. NRDC, Inc.,*
  467 U.S. 837 (1984) ...................................................................................................1

*Curran v. Bayer Healthcare LLC,*
  2019 U.S. Dist. LEXIS 15362 (N.D. Ill. Jan. 31, 2019) .........................................15

*Davidson v. Kimberly-Clark Corp.,*
  889 F.3d 956 (9th Cir. 2018) ..................................................................................15

*Dolin v. GlaxoSmithKline LLC,*
  901 F.3d 803 (7th Cir. 2018) ....................................................................................2

*Geffner v. Coca-Cola Co.,*
  343 F. Supp. 3d 246 (S.D.N.Y. 2018) .......................................................................7

*Harris v. Topco Assocs., LLC,*
  538 F. Supp. 3d 826 (N.D. Ill. 2021) ........................................................................5

*Hawkins v. Kroger Co.,*
  906 F.3d 763 (9th Cir. 2018) ....................................................................................4

*Hughes v. Ester C Co.,*
  930 F. Supp. 2d 439 (E.D.N.Y. 2013) ....................................................................13

*In re Mex. Money Transfer Litig.*,
   267 F.3d 743 (7th Cir. 2001) ..................................................................................11

*In re PepsiCo, Inc., Bottled Water Mktg.& Sales Pracs. Litig.*,
   588 F. Supp. 2d 527 (S.D.N.Y. 2008) ...................................................................9

*Jovel v. I-Health, Inc.*,
   2013 U.S. Dist. LEXIS 139661 (E.D.N.Y. Sep. 27, 2013) ....................................7

*Kail v. Wolf Appliance, Inc.*,
   2017 U.S. Dist. LEXIS 133280f (E.D.N.Y. Aug. 21, 2017) ................................14

*Leiner v. Johnson & Johnson Consumer Cos.*,
   215 F. Supp. 3d 670 (N.D. Ill. 2016) ...................................................................15

*Macormic v. Vi-Jon*,
   2021 U.S. Dist. LEXIS 247055 (E.D. Mo. Aug. 6, 2021) .....................................4

*Mednick v. Precor, Inc.*,
   320 F.R.D. 140 (N.D. Ill. 2017) .....................................................................10, 11

*Moreno v. Vi-Jon, Inc.*,
   2021 U.S. Dist. LEXIS 40032 (S.D. Cal. Mar. 3, 2021) .....................................1, 7

*Muir v. Nature's Bounty (De), Inc.*,
   2018 U.S. Dist. LEXIS 128738 (N.D. Ill. Aug. 1, 2018) ....................................10

*Panag v. Farmers Ins. Co. of Wash.*,
   166 Wash. 2d 27 (2009) .......................................................................................13

*Payton v. Cty. of Kane*,
   308 F.3d 673 (7th Cir. 2002) ...............................................................................10

*Prescott v. Bayer Healthcare LLC*,
   2020 U.S. Dist. LEXIS 136651 (N.D. Cal. July 31, 2020) ....................................4

*Reiter v. Sonotone Corp.*,
   442 U.S. 330 (1979) .............................................................................................13

*Sitt v. Nature's Bounty, Inc.*,
   2016 U.S. Dist. LEXIS 131564 (E.D.N.Y. Sep. 26, 2016) ....................................5

*Smith-Brown v. Ulta Beauty, Inc.*,
   2019 U.S. Dist. LEXIS 30460 (N.D. Ill. Feb. 26, 2019) .....................................15

*Suchanek v. Sturm Foods, Inc.*,
   311 F.R.D. 239 (S.D. Ill. 2015) ...........................................................................11

*Tarzian v. Kraft Heinz Foods Co.*,
   2019 U.S. Dist. LEXIS 175670 (N.D. Ill. Oct. 10, 2019) ...................................15

*Turek v. General Mills, Inc.*,
   662 F.3d 423 (7th Cir. 2011) .................................................................................5

*Tyman v. Pfizer, Inc.*,
   2017 U.S. Dist. LEXIS 212879 (S.D.N.Y. Dec. 27, 2017) .................................14

*Weisblum v. Prophase Labs, Inc.*,
   88 F. Supp. 3d 283 (S.D.N.Y. 2015) ...................................................................14

*Woodman's Food Market, Inc. v. Clorox Co.*,
   833 F.3d 743 (7th Cir. 2016) ..................................................................................................10

**Statutes**

21 U.S.C. § 343 ......................................................................................................................1

21 U.S.C. § 352 ............................................................................................................... 1, 3, 5

21 U.S.C. § 355 ......................................................................................................................2

21 U.S.C. § 362 ......................................................................................................................1

21 U.S.C. § 379r(a ..................................................................................................................1

**Regulations**

16 C.F.R. § 1500.20 ...............................................................................................................8

21 § C.F.R 330.1 ................................................................................................................ 2, 3

21 C.F.R. § 341.1 .......................................................................................................... 2, 3, 11

21 C.F.R. § 341.74 ............................................................................................................. 2, 6

**Other Authorities**

48 Fed. Reg. 48,576 (Oct. 19, 1983) ......................................................................................8

Defendants sell cough syrups like Wal-Tussin that are prominently labeled "Non-Drowsy." To reasonable consumers, this means that the syrups won't make you drowsy. And consumers rely on this when they are driving, working, and supervising their children—when they don't want to be drowsy, and being drowsy would be dangerous. In truth, however, the syrups do cause drowsiness, and Defendants know it. Consumers are being deceived, overcharged, and put in danger.

Defendants' motion mischaracterizes the Complaint, fails to cite controlling law, and turns the motion to dismiss standard on its head. It should be denied.

## I.      The FDC Act does not preempt Plaintiff's claims.

The FDC Act has an express preemption clause. It preempts state-law claims that impose requirements "different from," "in addition to," or "not identical" to the Act. 21 U.S.C. § 379r(a).

The FDC Act's preemption clause generally does not preempt state-law deceptive advertising claims. This is because state deceptive advertising laws prohibit false and misleading labels. And the Act already prohibits food, drug, and cosmetics labels that are "false or misleading in any particular." 21 U.S.C. § 343(a) (food), § 352(a) (drugs), § 362(a) (cosmetics). So in general, the prohibition that deceptive advertising laws impose is "identical" to (not "different from" or "in addition to") a prohibition the Act already imposes. *E.g., Moreno v. Vi-Jon, Inc.*, , 2021 U.S. Dist. LEXIS 40032, at *30 (S.D. Cal. Mar. 3, 2021) ("Generally, courts have found that claims based on parallel state laws that mirror the relevant sections of the FDCA are not preempted").

Instead, the Act's preemption clause only preempts a specific type of state-law claim: ones challenging a labeling statement or omission that the FDA (which implements the Act) has reviewed and concluded is not false or misleading. [1] Such claims would impose a requirement that is "different from" and "in addition" the requirements of the Act.

---

[1] The FDA is tasked with implementing and interpreting the Act. So if the FDA concludes that a label complies with the Act (and so does not violate the Act's prohibition on labels that are "false or misleading in any particular"), that conclusion is generally binding. *Chevron, U.S.A., Inc. v. NRDC, Inc.*, 467 U.S. 837, 844 (1984).

We explain how this applies to over-the-counter drugs like the Walgreens cough syrups. We then show that Ms. Hall's state-law claims are not preempted.

### A. The FDC Act does not preempt state-law claims challenging drug labels for including voluntary deceptive statements, unless the FDA has expressly approved the particular statement being challenged.

For certain over-the-counter drugs like Defendants' cough syrups, the FDA issues regulations known as monographs. Monographs identify the active ingredients that can be marketed for certain uses (for example, cough remedies). *E.g.*, 21 C.F.R. § 341.1. They also set forth all of the required disclosures and warnings that must be included on the label. *E.g.*, 21 C.F.R. § 341.74. The required disclosures generally include a "statement of identity" (the name of the product and what kind of medicine it is, for example a cough suppressant); the use "indications" for the product; the warnings that must be included; and the directions for safe use. *Id.*

Because monographs comprehensively identify everything that *must* be included on the label of an over-the-counter drug, they preempt state-law claims seeking to require additional disclosures. If the monograph does not require a particular disclosure, that means that the FDA determined that the Act's prohibition against false and misleading labels does not require that disclosure. A state-law requirement that it be added would therefore be "in addition to" the requirements the Act imposes.

Monographs do not, however, catalog every conceivable labelling claim and say whether it is prohibited or allowed, truthful or deceptive. *See generally* 21 C.F.R. §§ 341 *et. seq.* Nor does the FDA individually review every statement on over-the-counter drug labels to ensure that they are truthful and not misleading, before approving the drug for sale. [2] Instead, FDA regulations simply provide that labels must comply with the general requirements of the Act, including the general prohibition on "false or misleading" labelling statements. 21 § C.F.R 330.1 (in addition to complying with the

---

[2] In contrast, the FDA does do this for new prescription drugs. *See Dolin v. GlaxoSmithKline LLC*, 901 F.3d 803, 806 (7th Cir. 2018); 21 U.S.C. § 355(b)(1)(A)). As a result, state law claims against prescription drug labels are generally preempted.

2

monograph, drug must be "labeled in compliance with chapter V" of the Act); 21 U.S.C. § 352 (Chapter V of the Act). And the FDA generally does not police over-the-counter labels to ensure compliance with this requirement. So, for voluntary labelling statements, determining whether a particular statement is truthful or misleading is generally not decided by the FDA, and is instead left to the courts (who enforce the identical requirements of state deceptive advertising laws).[3] Claims challenging voluntary statements that are false or misleading, therefore, do not impose requirements "different from" or "in addition to" the Act; they impose an "identical" requirement to the Act's prohibition of false or misleading labelling.

In *Bell*, the Seventh Circuit addressed this same issue in the analogous context of food regulation. *Bell v. Publix Super Mkts., Inc.*, 982 F.3d 468, 483 (7th Cir. 2020). The plaintiffs claimed that defendants' "100% grated cheese" label was deceptive because the products contained more than just cheese. *Id.* The FDA had issued comprehensive regulations governing grated cheese labels. Those regulations did not specifically prohibit the "100% grated cheese" label. "From this silence, [the defendants] argue[d] that any state-law ruling that prohibited them from using the phrase '100% cheese' would establish a requirement not identical to those set out in the FDA's" regulations and was therefore preempted. *Id.* The Seventh Circuit rejected this argument, distinguishing the cases Defendants cite where plaintiffs' "attempt to use state law to require that disclosure language be *added* to a [] label when federal regulations did not explicitly require it." *Id.* at 484. "Plaintiffs are not seeking to *add* labeling requirements. They seek only to stop defendants from voluntarily adding deceptive language to the federally permitted labels. The [regulation] does

---

[3] Defendants claim that so long as a label meets the specific requirements set forth in the applicable monograph, the drug is "not misbranded" and complies with the Act. Mot. 2 (citing 21 C.F.R. §330.10(a)); Mot. 3 (citing 21 C.F.R. §341.1(a)); Mot. 5 (citing both). This is not true. To be "not misbranded," a label must comply not just with the specific requirements in the monograph, but also with the general requirements of the Act—including the prohibition on false or misleading labels. 21 § C.F.R 330.1(a) (drug must be "labeled in compliance with chapter V" of the Act, including the prohibition on labelling that is "false or misleading in any particular," *see* 21 U.S.C. §352 (Chapter V of the Act)); 21 C.F.R. 341.1(a) (over-the-counter cough medicines must meet "each of the general conditions established in § 330.1.").

not address that language, the '100%.' If state law prevents such deception, it will not establish any new requirement different from" the FDA regulations. Indeed, the FDC Act already prohibits "labeling [that] is 'false or misleading in any particular.'" *Id.* "Absent contrary language in [a regulation] that protects a particular statement, [the FDC Act] does not expressly preempt state-law prohibitions on deceptive statements that sellers add voluntarily to their labels or advertising." *Id.*

In short, under controlling law, "[t]he FDCA's preemption provision means that, while states may not require sellers to *add* further labeling that is not required by federal law, they may prevent sellers from voluntarily adding deceptive content that is not required by federal law." *Id.* at 485. And courts across the country have consistently reached this same conclusion. [4]

### B. Ms. Hall's claims challenge Defendants' labels for including the voluntary deceptive statement "Non-Drowsy"—not for failing to include a warning.

Ms. Hall's claims are of the type that, under controlling Seventh Circuit law, are not preempted. Ms. Hall contends that Defendants' labels are deceptive because they falsely assert that Defendants' products are "Non-Drowsy"—not because they fail to include an affirmative drowsiness warning. In fact, Ms. Hall openly acknowledges that Defendants' labels would not be deceptive if they "simply omitted the false and misleading statement, 'Non-Drowsy,' from their products." Compliant ¶26. Thus, if successful, Ms. Hall's claims would not require Defendants to affirmatively warn consumers that their products cause drowsiness, or add anything to their labels. Her claims would simply require that Defendants "remove the voluntarily-added lie" "Non-Drowsy" from their products. *Bell,* 982 F. 3d at 484.

---

[4] *See, e.g., Hawkins v. Kroger Co.*, 906 F.3d 763, 771-72 (9th Cir. 2018) ("Because the FDA regulations do not authorize the contested statement, Hawkin's labeling claims are not preempted); *Astiana v. Hain Celestial Grp., Inc.,* 783 F.3d 753, 758-59 (9th Cir. 2015) (claims challenging voluntary "all natural" label not preempted); *Ault v. J.M. Smucker Co.*, 2014 U.S. Dist. LEXIS 67118, at *9 (S.D.N.Y. May 15, 2014) (same); *Prescott v. Bayer Healthcare LLC*, 2020 U.S. Dist. LEXIS 136651, at *6-8 (N.D. Cal. July 31, 2020) ("if Plaintiffs' suit ultimately requires Defendants to remove the phrase 'mineral-based' from their labels, such a result does not conflict with the FDCA because FDA regulations do not require or prohibit the use of phrase 'mineral-based.'"); *Macormic v. Vi-Jon*, 2021 U.S. Dist. LEXIS 247055, at *21 (E.D. Mo. Aug. 6, 2021) (challenge to representation that drug kills 99.9% of germs not preempted).

After alleging that the affirmative "Non-Drowsy" representation is what makes Defendants' labels deceptive, the Complaint alleges that the accused products "do not disclose anywhere on their packaging that they do or can cause drowsiness, or that drowsiness is a side effect." Complaint ¶15. But the point of this allegation is not to imply that an affirmative warning is required. It is to make clear that there is nothing else on the label that qualifies "Non-Drowsy" to make it non-deceptive. *See id.* ¶24 (explaining this). In other words, there is no qualifying language on the label that must be considered when evaluating whether the label as a whole is misleading. *Cf. Sitt v. Nature's Bounty, Inc.*, 2016 U.S. Dist. LEXIS 131564, at *42 (E.D.N.Y. Sep. 26, 2016) (disclaimer can sometimes cure otherwise deceptive label). Remove the deceptive "Non-Drowsy" statement, and everyone agrees that nothing further is required.

Defendants assert that Ms. Hall's claims are like the claims in *Harris v. Topco Assocs., LLC*, 538 F. Supp. 3d 826 (N.D. Ill. 2021) and *Turek v. General Mills, Inc.*, 662 F.3d 423 (7th Cir. 2011), which were preempted. Mot. 7-8. But unlike Ms. Hall, the plaintiff in *Topco* claimed that the defendant's labels were deceptive because they "failed to make material disclosures." *Topco*, 2021 U.S. Dist. LEXIS 89716, at *10. Likewise the plaintiff in *Turek* claimed that defendants' labels were deceptive because they failed to include certain affirmative "disclaimers." *Turek*, 662 F.3d at 427. So *TopCo* and *Turek* are examples of cases where, unlike here, the claims sought to require "disclosure language be *added* to a [FDA-regulated] label when federal regulations did not explicitly require it." *Bell*, 982 F.3d at 484 (emphasis in original) (distinguishing *Turek* on this basis).

Because Ms. Hall's claims do not seek additional warnings or disclaimers not required by the FDA, they would not introduce "varying state requirements [that] would interfere with the FDA's regulatory scheme." Mot. 8. The only requirement they would impose is "don't make false or misleading statements on your drug labels"—which is identical to the FDC Act. 21 U.S.C. §352.

In passing, Defendants acknowledge that they may be attacking a straw man. Mot. 8

(acknowledging that Plaintiff "will likely argue that she is not seeking to interfere with the FDA-approved label, but only to force manufacturers to remove the term 'Non-Drowsy,' which is not specifically mentioned in the regulations."). But instead of confronting Ms. Hall's actual claims, Defendants pivot right back to inaccurately asserting that Plaintiff is seeking "additional-disclaimer requirements." Mot. 8. Thus, Defendants fail to meet their burden to establish preemption.

> **C.    The FDA has not expressly approved the particular "Non-Drowsy" statement.**

To be sure, if the monograph or some other FDA regulation expressly approved products containing DXM to be labeled "Non-Drowsy," then a state-law challenge to that statement would be preempted. *Bell*, 982 F.3d at 484. But the FDA has never allowed products containing DXM to be marketed as "Non-Drowsy"—in the governing monograph or anywhere else.

The monograph, however, does not require, or expressly approve, the "Non-Drowsy" label. *See* 21 C.F.R. § 341.74. What's more, the monograph does expressly approve other affirmative label statements. 21 C.F.R. § 341.74(b)(3) (identifying optional statements that "the labeling of the product may contain"). For example, it expressly allows sellers to say that a cough medicine like Wal-Tussin "[t]emporarily helps you cough less." *Id.* That the FDA did not include "Non-Drowsy" on the list of approved statements shows that this statement has not been approved.

Defendants argue that Walgreens "compl[ies] with the specific labeling requirements for medications that include DXM as laid out in the FDA monograph" because the monograph does not contain an express provision specifically prohibiting the "Non-Drowsy" claim. Mot. 6. But as explained above, the monograph does prohibit adding false or misleading statements. *See* note 3. By claiming that their medicines are "Non-Drowsy," Defendants violate this monograph prohibition. What's more, Courts have repeatedly rejected this anything-not-specifically-prohibited-is-allowed argument. By "[defendant's] logic, a manufacturer could make any claim—wild, untruthful, or otherwise—about a product whose contents are not addressed by a specific

6

regulation. The [FDC Act], however, proscribes statements that are 'false or misleading in any particular,' not statements that are 'prohibited by specific FDA regulations.'" *Astiana*, 783 F.3d at 758.[5]

Defendants also argue that during rulemaking for the cough medicine monograph, the FDA "expressly declined to require manufacturers to disclose drowsiness as a potential side-effect of DXM in the final monograph." Mot. 6. If Defendants are suggesting that the FDA therefore approved the "Non-Drowsy" statement and so preempted Plaintiff's claims, Defendants are wrong.

To begin, for the FDA's statements to be given preemptive effect, they would need to demonstrate a "clear and manifest" intent to preempt state-law claims challenging the "Non-Drowsy" representation. *See Moreno v. Vi-Jon, Inc.*, 2021 U.S. Dist. LEXIS 40032, at *30 (S.D. Cal. Mar. 3, 2021). This is because "[i]n fields traditionally occupied by the states, such as health and safety regulation, there is a strong presumption against federal preemption." *Jovel v. I-Health, Inc.*, 2013 U.S. Dist. LEXIS 139661, at *12 (E.D.N.Y. Sep. 27, 2013). And "[c]ourts have a duty to accept the reading [of a preemption clause] that disfavors pre-emption when such a reading is plausible." *Geffner v. Coca-Cola Co.*, 343 F. Supp. 3d 246, 251-52 (S.D.N.Y. 2018) (cleaned up). So unless the FDA's statements demonstrate a "clear and manifest" intent to approve a particular statement, there can be no preemption. This is why, to find that a challenge to "deceptive statements that sellers add voluntarily to their labels" is preempted, the Seventh Circuit requires affirmative "language in [an FDA regulation] that protects [that] particular [challenged] statement." *Bell*, 982 F.3d at 484.

Defendants point to no such language in the FDA rulemaking process regarding cough medicines that protects the particular "Non-Drowsy" statement, or anything like it. Under

---

[5] *See, e.g. id.* (rejecting argument that "the FDA's failure to issue specific regulations on the subject is tantamount to a conscious decision by the agency to permit any use of this term a manufacturer sees fit"); *Bell*, 982 F.3d at 483 (challenge to not-specifically-prohibited "'100%' cheese" not preempted); *Canale v. Colgate-Palmolive Co.*, 258 F. Supp. 3d 312, 318-23 (S.D.N.Y. 2017) (challenge to not-specifically-prohibited teeth-whitening claim not preempted); *Ault*, 2014 U.S. Dist. LEXIS 67118, at *9 (challenge to not-specifically-prohibited "all natural" claim not preempted).

controlling law, that ends the inquiry.  Ms. Hall's claims are not preempted.

Moreover, for consumer products in general, and over-the-counter drugs in particular, regulators do not require the label to include a comprehensive disclosure of all material dangers and side effects.  Instead, regulators use their discretion in deciding which limited set of warnings is crucial, based on the best information available at the time. [6]  So we cannot infer from the FDA's decision not to require a drowsiness *warning* that the FDA concluded that DXM does not cause drowsiness—much that it intended to allow DXM to be marketed as "Non-Drowsy."

Given that a regulator might decide not to require a warning for any number of reasons, as a general matter a regulator's decision not to require a label warning cannot demonstrate the "clear and manifest" intent that would be needed to establish preemption.  And specifically here, the record confirms that the reason the FDA declined to require a warning was not that DXM is "non drowsy."  It is that at the time, the FDA was "not aware of data demonstrating that … dextromethorphan … require[s] a drowsiness warning."  48 Fed. Reg. 48,576, 48,589 (Oct. 19, 1983).  In other words, it was because there was not enough data showing that DXM presented a sufficiently severe and frequent risk of drowsiness to warrant a mandatory label warning—not because the FDA concluded that DXM *does not cause drowsiness*.  In fact, the FDA recognized that cough suppressants such as DXM might trigger "a secondary pharmacological action … tantamount to a sedative effect" and that multiple references found drowsiness to be a side effect.  *Id.*  So far from concluding that DXM does not cause drowsiness or approving the "Non-Drowsy" claim, the

---

[6] For example, the Consumer Product Safety Commission requires products of certain dimensions to include a "CHOKING HAZARD" warning on their label if they are marketed to toddlers.  16 C.F.R. § 1500.20.  This is because objects of these dimensions are *most likely* to cause choking deaths.  But it does not mean that the Commission determined that these are the *only* products that can cause choking.  That inference would allow companies to market toys slightly larger than the threshold dimensions to toddlers and affirmatively claim on the package: "NOT A CHOKING HAZARD."  But permitting this false assertion would cause deaths. Ex. A (*Characteristics of Objects that Cause Choking in Children,* JAMA 274:1763 at 1766, col. 1 (1995)) (Over 1 in 7 nonfood choking deaths are caused by objects larger than the dimensions that trigger the warning requirement).  The Commission focused its warning on certain dimensions because they presented the gravest danger of choking, not because it found that all other dimensions present no material danger.

FDA's rulemaking acknowledged that there was evidence that DXM *does* cause drowsiness.

Finally, since the 1980s, more evidence has come out showing that DXM causes drowsiness. *See* Complaint ¶19-20. This is why reliable sources warn that DXM causes drowsiness. *Id.* It is also why regulators that have looked at the issue more recently, such as the FAA, have taken affirmative steps to address this danger, such as prohibiting pilots who have taken DXM from flying. *See* Complaint ¶21. This recent evidence (not before the FDA at the time) confirms that it is false and misleading to label drugs with DXM "Non-Drowsy." It also shows why the FDA's 1987 decision not to require an affirmative drowsiness warning—which was expressly based on lack of data— should not be interpreted to give drugmakers today, who now know better, a license to falsely assert that their cough medicines are "Non-Drowsy."

Defendants cite two district court cases from the Southern District of New York, *Bowling v. Johnson & Johnson*, 65 F. Supp. 3d 371, 376 (S.D.N.Y. 2014) and *In re PepsiCo, Inc., Bottled Water Mktg. & Sales Pracs. Litig.*, 588 F. Supp. 2d 527, 538 (S.D.N.Y. 2008). Mot. 8-9. In *Bowling*, however, the monograph governing toothpaste expressly allowed sellers "(1) to represent that [products containing certain ingredients] prevent tooth decay and (2) to provide further labeling to explain how decay is prevented." *Canale v. Colgate-Palmolive Co.*, 258 F. Supp. 3d 312, 322-23 (S.D.N.Y. 2017) (explaining *Bowling*). And the district court concluded that the challenged "restores enamel" claim was simply explaining how tooth decay was preempted. *Id.* So, the court concluded, the FDA "had clearly addressed the substance of the claims at issue" and approved it. *Id.* Similarly, in *PepsiCo*, the plaintiffs asserted that graphics depicting nature scenes on bottled water misleadingly suggested that the water was "spring" water as opposed to purified tap water. *In re PepsiCo, Inc., Bottled Water Mktg. & Sales Pracs. Litig.*, 588 F. Supp. 2d 527, 538 (S.D.N.Y. 2008). But the FDA had expressly considered this kind of representation (nature graphics suggestive of spring water) and concluded that, so long as the water was purified, this was not materially misleading to consumers. *Id.* So in

9

*Bowling* and *PepsiCo*, unlike here, the FDA had expressly approved the challenged labelling.

In sum, Ms. Hall's claims would not require Defendants to add any affirmative disclosure to their label. The claims would merely require Defendants to stop falsely claiming that their products are "Non-Drowsy." And the "Non-Drowsy" claim has never been approved by the FDA. Under the Seventh Circuit's decision in *Bell*, Ms. Hall's claims are not preempted.

## II.  Ms. Hall can bring deceptive advertising claims for out-of-state class members.

Ms. Hall asserts consumer protection claims for consumers who purchased Defendants' products in Washington and six other states. ¶43. Defendants argue that Ms. Hall "lacks statutory standing to bring non-Washington" claims because she "is a Washington resident who bought the product in Washington." Mot. 9. This argument fails for two independent reasons.

*First,* this is a class certification issue, not a standing issue for a motion to dismiss. "[T]he question of who is authorized to bring an action under a statute is one of statutory interpretation; it does not implicate Article III standing or jurisdiction." *Woodman's Food Market, Inc. v. Clorox Co.*, 833 F.3d 743, 750 (7th Cir. 2016). As a result, any limits on what out-of-state claims Ms. Hall can bring are a "consequence of the class-certification prerequisites imposed by Rule 23 … not of Article III" standing. *Muir v. Nature's Bounty (De), Inc.*, 2018 U.S. Dist. LEXIS 128738, at *20-23 (N.D. Ill. Aug. 1, 2018). So, as "the weight of recent authority" holds, this issue should be decided at class certification, not on the pleadings. [7] *Mednick v. Precor, Inc.*, 320 F.R.D. 140, 157 (N.D. Ill. 2017); *Muir v. Nature's Bounty (De), Inc.*, 2018 U.S. Dist. LEXIS 128738, at *21 (N.D. Ill. Aug. 1, 2018) (same).

*Second,* if the Court reaches this question now, it should find that all the non-Washington claims may proceed. If the consumer protection laws of multiple states "share sufficient common characteristics," claims under the laws of those states can be grouped in a single class, represented by

---

[7] The out-of-context dicta Defendants quote is talking about a situation where the named plaintiff has not suffered any cognizable injury at all, under the law of any state. *Payton v. Cty. of Kane*, 308 F.3d 673, 682 (7th Cir. 2002). Here it is undisputed that Ms. Hall has a cognizable injury under Washington law.

a plaintiff from any of those states. *Mednick v. Precor, Inc.*, 320 F.R.D. 140, 157 (N.D. Ill. 2017) (certifying multi-state consumer fraud class). [8]  And here, Ms. Hall asserts a hand-selected set of six state consumer protection laws that are substantially similar to Washington's.  Complaint ¶44 (setting forth similarities); *Allen v. ConAgra Foods, Inc.* 331 F.R.D. 641, 666 (N.D. Cal. 2019) (performing a careful analysis of each of the consumer protection laws asserted here, and concluding that they are substantially similar).  So at certification, these claims can be grouped together in a single class.  *Id.* (holding that it would be appropriate to certify a multi-state consumer protection class including each of the states represented here).  They should all be allowed to proceed now.

## III.    Because Defendants' preemption defense fails, the safe harbor does not apply.

Defendants repeat their argument (rebutted above) that "permission to use the [Non-Drowsy] language at issue here can be inferred" from the FDA's rulemaking process.  Mot. 9-10. Defendants argue that Washington's "safe harbor" provision therefore bars Ms. Hall's claims, "[e]ven if federal preemption did not apply directly."  *Id.*  This argument fails on two levels.  Such safe harbor provisions "have no effect if the claims are not preempted."  *See Bourbia v. S.C. Johnson & Son, Inc.*, 375 F. Supp. 3d 454, 465 (S.D.N.Y. 2019) (analogous safe harbor provisions in New York's materially similar consumer protection statute).  And, as explained in detail above, the FDA has not given permission to falsely label medicines containing DXM "Non-Drowsy," so the factual predicate of this argument is wrong.  *See* §I above.

## IV.    Ms. Hall plausibly alleges that Defendants violate the consumer protection laws of Washington (as well as other states with substantially similar laws).

### A.    The "Non-Drowsy" claim is deceptive.

Ms. Hall alleges that Defendants' cough syrups are prominently labelled "Non-Drowsy."

---

[8] *Suchanek v. Sturm Foods, Inc.*, 311 F.R.D. 239, 264 (S.D. Ill. 2015) (same); *Allen v. ConAgra Foods, Inc.*, 331 F.R.D. 641, 666 (N.D. Cal. 2019) (same); *cf. In re Mex. Money Transfer Litig.*, 267 F.3d 743, 747 (7th Cir. 2001) (if the claim "recovery depends on law that varies materially from state to state," that can defeat certification).

Complaint ¶¶11-17.  A reasonable consumer would understand this to mean that, when taken as directed, Defendant's cough medicines do not make you drowsy, and drowsiness is not a side effect (much less a common one).  *Id.* ¶¶22-29.  And this is false because Defendants' cough syrups actually do make people—including Ms. Hall—drowsy.  *Id.*  ¶¶18-21, 30.  Moreover, although not required at this stage, Ms. Hall backs up her allegations with evidence, including: 1) a dictionary definition and Consumer Reports article showing that "Non-Drowsy" means what Ms. Hall says it does, ¶23 n.8-9; and 2) multiple sources confirming that DXM causes drowsiness at the recommended doses, including National Library of Medicine drug information (¶18), peer-reviewed research (¶19), the FDA's adverse event database (¶20) , and FAA regulations (¶21).

Defendants assert that Ms. Hall "seems to be claiming she believed 'Non-Drowsy' necessarily meant she would not become drowsy under any circumstances."  Mot. 11.  But Ms. Hall isn't claiming that "Non-Drowsy" conveys that the product confers immunity from drowsiness.  She is claiming that, to reasonable consumers, it means that the syrups won't make you drowsy if taken as directed.  She backs that up with evidence of how consumers understand the term "Non-Drowsy."  Complaint ¶23 n.8-9.  Moreover, "[h]ow reasonable consumers actually understand defendants' [Non-Drowsy] labels is a question of fact that cannot be resolved on the pleadings," much less in Defendants' favor.  *Bell*, 982 F.3d at 483.  And if "Non-Drowsy" doesn't mean "this medicine won't make you drowsy when you take it as directed," then what does it mean?

Defendants first claim that "Plaintiff cites no facts supporting her claim that drowsiness is in fact a 'common side effect' of products with DXM."  Mot. 11.  This assertion is simply false.  Complaint ¶¶19-21, 30 (pleading facts, and supporting them with evidence).  Defendants next attack the reliability of the studies and data that Ms. Hall cites.  Mot. 11 (characterizing the FDA database as "anecdotal" and criticizing the cited study for "lack[ing] a control group" and being conducted by a competitor).  But "the determination of whether a statement is false or misleading is a fact-based

12

inquiry and thus not appropriately determined at this stage of the proceedings." *Catilina Nominees Proprietary Ltd. v. Stericycle, Inc.*, 2021 U.S. Dist. LEXIS 213514, at *13-14 (N.D. Ill. Nov. 4, 2021). Defendants' challenges go to the "weight that should be given to this study" and the FDA data, which "cannot be resolved on a motion to dismiss." *Hughes v. Ester C Co.*, 930 F. Supp. 2d 439, 461-462 (E.D.N.Y. 2013). `They also lack merit. For example, the study was peer-reviewed, it compared participants who took DXM to participants who took a comparison medicine, and it established a substantially greater incidence of drowsiness in the DXM group. Ex. B.

Defendants suggest that Ms. Hall has not sufficiently alleged that Defendants' products are what caused her to become drowsy. Mot. 11. But Ms. Hall alleges that she took Defendants' medicine, that that medicine causes material drowsiness, and that after taking it, she became drowsy. Complaint ¶30. This is more than sufficient at the pleadings stage, when all facts must be viewed in the light most favorable to Ms. Hall and all reasonable inferences must be drawn in her favor. Defendants' suggestion that it is just a coincidence that Ms. Hall became drowsy right after taking medicine that has been shown to cause drowsiness flips the motion to dismiss standard on its head.

**B. Defendants' deceptive practice caused a compensable injury.**

Defendants suggest that Ms. Hall is seeking compensation for the "personal injur[y]" of becoming "'unexpectedly drowsy.'" Mot. 12. But the injury for which Ms. Hall seeks compensation is not becoming drowsy; it is that she and the class "did not get what they paid for" and "overpaid for the products because the products are sold at a premium due to Defendants' misrepresentations." Complaint ¶58. Because Defendants fail to address Ms. Hall's true allegations, they cannot carry their burden. And it is well established that an over-payment like the one Ms. Hall alleges is a compensable injury to "business or property." *E.g., Panag v. Farmers Ins. Co. of Wash.*, 166 Wash. 2d 27, 64 (2009) (quoting *Reiter v. Sonotone Corp.*, 442 U.S. 330, 340 (1979)) ("A person whose property is diminished by a payment of money wrongfully induced is injured in his property.").

**V.      Ms.  Hall plausibly alleges a breach of an express warranty and a violation of the Magnuson-Moss Act.**

Defendants argue that Ms. Hall's breach of warranty claims fail because "Non-Drowsy" is not false or misleading.  Mot. 13.  As explained above, this argument fails.

Defendants also makes two Magnuson-Moss-specific arguments.  Both lack merit.

Defendants first argue that "Non-Drowsy" "is a product description rather than an affirmation that [the product] will be defect free or meet a specified performance level."  Mot. 13-14.  This is wrong.  The Magnuson-Moss Act "allows a consumer to recover damages under existing state law" and thus "claims under the [Act] stand or fall with the express and implied warranty claims under state law."  *Kail v. Wolf Appliance,* Inc., 2017 U.S. Dist. LEXIS 133280, at *17 (E.D.N.Y. Aug. 21, 2017).  Because Ms. Hall states a claim for breach of express warranty under state law, she states claim under the Act.  *See id.*  That ends the inquiry.  What's more, "Non-Drowsy" is not a mere "product description"; it is a promise that the product is defect free (it does not have ingredients that will make you drowsy) and that it will provide a specified performance (it will not make you drowsy) over a specified period of time (during the dosing interval on the label).

Defendants next argue that Ms. Hall's claims do not comply with the jurisdictional requirements of section 2310(d)(3).  Mot. 14.  But the "vast majority of courts" have held that the Class Action Fairness Act (CAFA) "provides an alternative basis for jurisdiction without regard for the MMWA," meaning that Magnuson-Moss claims can proceed even though they do not meet the jurisdictional requirements of section 2310(d)(3).  *Weisblum v. Prophase Labs, Inc.*, 88 F. Supp. 3d 283, 293 (S.D.N.Y. 2015); *Birdsong v. Apple, Inc.*, 590 F.3d 955, 957 n.1 (9th Cir. 2009).[9]

**VI.      Ms. Hall has standing to pursue an injunction.**

---

[9] Contrary to what Defendants assert, Ms. Hall did give them pre-suit notice of her warranty claim. Complaint ¶65.  And the "question is not whether [Plaintiff] gave defendant enough notice before filing suit; it is whether [she] gave reasonably prompt notice 'after [she] discover[ed] or should have discovered' the alleged breach." *Tyman v. Pfizer, Inc.*, 2017 U.S. Dist. LEXIS 212879, at *58-59 (S.D.N.Y. Dec. 27, 2017).

Defendants assert that there is no threat of future injury because Ms. Hall now knows that Defendants' products are deceptively labeled and won't be misled again. Mot. 14-15. But a "plaintiff alleges sufficient facts to assert a claim for injunctive relief in a consumer protection action if she alleges that she faces a 'threat of future harm' because 'she will be unable to rely on the product's advertising or labeling in the future, and so will not purchase the product although she would like to.'" *Smith-Brown v. Ulta Beauty, Inc.*, 2019 U.S. Dist. LEXIS 30460, at *43 (N.D. Ill. Feb. 26, 2019). [10] Here, Ms. Hall pleads exactly this. Complaint ¶31. And although courts are split on this issue, "[t]he better view…is the one taken by courts that have declined to hold that plaintiffs lacked standing based on the fact that they abandoned the product upon their discovery that it had been deceptively labeled." *Leiner v. Johnson & Johnson Consumer Cos.*, 215 F. Supp. 3d 670, 672 (N.D. Ill. 2016) (collecting cases). Otherwise, "the injunctive provisions of consumer protection statutes … could never be invoked to enjoin deceptive practices." *Id.* at 673.

Defendants suggest that *Camasta* resolved the split in their favor. But as post-*Camasta* cases demonstrate, Defendants are wrong. In *Camasta*, "the plaintiffs made merely conclusory allegations of a threat of future harm, and the offending products were not only mislabeled but also flawed or defective." *Curran v. Bayer Healthcare LLC*, 2019 U.S. Dist. LEXIS 15362, at *13-14 (N.D. Ill. Jan. 31, 2019) (rejecting this same argument and distinguishing *Camasta*); *Smith-Brown*, 2019 U.S. Dist. LEXIS 30460, at *43 (finding standing post-*Camasta*). [11] Here, by contrast, Ms. Hall "alleges that [s]he 'would purchase the product again in the future if [s]he could be assured that … the product conformed to the'" "Non-Drowsy" claim on the label. *Curran* at *14. So, she can seek an injunction.

---

[10] *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 971 (9th Cir. 2018) ("Davidson's allegations that she would purchase truly flushable wipes manufactured by Kimberly-Clark if it were possible, her injury is concrete—it is real and not merely abstract.").

[11] *Tarzian v. Kraft Heinz Foods Co.*, 2019 U.S. Dist. LEXIS 175670, at *9 (N.D. Ill. Oct. 10, 2019) ("Courts in this district have interpreted *Camasta* to allow plaintiffs standing to seek injunctive relief where it is plausible that the plaintiff will purchase the product again.").

Dated: May 3, 2022

Respectfully submitted,

By: /s/ Simon Franzini

DOVEL & LUNER, LLP
Jonas B. Jacobson (Cal. Bar No. 269912)
Simon Franzini (Cal. Bar No. 287631)
201 Santa Monica Blvd., Suite 600
Santa Monica, California 90401
Telephone: (310) 656-7066
Facsimile: (310) 656-7069
jonas@dovel.com
simon@dovel.com

*Counsel for Plaintiff and the Proposed Class*