# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| TRACY HALL, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>WALGREENS BOOTS ALLIANCE, INC.; WALGREEN CO.,<br><br>Defendants. | Case No. 22-cv-00024<br><br>Judge Martha M. Pacold |

## ORDER

Defendants' motion to dismiss, [21], is denied without prejudice. The following question is respectfully certified to the Washington Supreme Court pursuant to the Revised Code of Washington § 2.60.020: Under the Revised Code of Washington § 19.86.170, is labeling as "non-drowsy" an over-the-counter antitussive containing dextromethorphan hydrobromide an "action[] . . . permitted by . . . [a] regulatory body . . . acting under statutory authority . . . of . . . the United States" such that this labeling decision falls within the statutory safe harbor?

All proceedings in this court are stayed pending the Washington Supreme Court's decision whether to accept review, and if it accepts, that court's answer to the question. The Clerk of the Court is directed to transmit to the Washington Supreme Court this order and request for certification along with a copy of the complete record of this case, and a copy of the public docket pursuant to the Revised Code of Washington §§ 2.60.020 and 2.60.030. The Clerk of Court is also directed to administratively close the case pending a response from the Washington Supreme Court. The parties should file a joint status report by November 13, 2023, or within seven days of the Washington Supreme Court's decision whether to accept review, whichever is sooner.

## STATEMENT

Plaintiff Tracy Hall brought this putative class action alleging that some of defendants' generic antitussives are mislabeled because their labels contain the phrase "non-drowsy" when, in fact, the active ingredient in those antitussives—Dextromethorphan Hydrobromide ("DXM")—can and does make users like her

drowsy. [1] ¶¶ 1–4, 11–21.[1] Hall claims that this mislabeling violates the consumer protection laws of a number of states, constitutes a breach of express warranty, and violates the Magnuson-Moss Warranty Act. *Id.* ¶¶ 42–75. Hall seeks monetary and injunctive relief. *Id.* ¶ 77.

Defendants moved to dismiss the complaint in its entirety. [21]. They argue that the state law claims are preempted by the express preemption provision in the Food, Drug, and Cosmetics Act ('FDCA"), 21 U.S.C. § 379r(a), that plaintiff's Washington state claim falls within a statutory safe harbor for actions "permitted by a regulatory body acting under statutory authority of the United States," Wash. Rev. Code § 19.86.170 (cleaned up), that plaintiff cannot assert violations of any state's laws other than Washington, that plaintiff has failed to state a claim, that plaintiff has not met the jurisdictional requirements in the Magnuson-Moss Warranty Act, and that she lacks standing to obtain injunctive relief.

On review of the motion and relevant briefing, the most appropriate course is to certify to the Washington Supreme Court the question whether the defendants' label falls within Washington's statutory safe harbor. Wash. Rev. Code § 19.86.170.

"Washington's certification statute allows certification where 'it is necessary to ascertain the local law of this state in order to dispose of such proceeding and the local law has not been clearly determined.'" *Potter v. City of Lacey*, 46 F.4th 787, 791 (9th Cir. 2022) (quoting Wash. Rev. Code § 2.60.020). In the Ninth Circuit (where certification to the Washington Supreme Court is more common), the court certifies questions that it "believe[s] the Washington Supreme Court is better qualified to answer in the first instance." *Id.* (quoting *Parents Involved in Cmty. Schs. v. Seattle Sch. Dist. No. 1*, 294 F.3d 1085, 1092 (9th Cir. 2002) (cleaned up)). "[C]ertification is especially appropriate when a question of law 'has not been clearly determined by the Washington courts,' and the 'answer to [the] question is outcome determinative.'" *Id.* (quoting *Bylsma v. Burger King Corp.*, 676 F.3d 779, 783 (9th Cir. 2012) (internal quotation marks omitted)).

The Washington courts have not clearly determined the meaning of the safe harbor statute as it applies to this case. The most on-point cases are *Miller v. U.S. Bank of Washington, N.A.*, 865 P.2d 536 (Wash. 1994), and *Vogt v. Seattle-First National Bank*, 817 P.2d 1364 (Wash. 1991). Those cases state that the safe harbor statute "does not exempt actions or transactions merely because they are regulated generally; the exemption applies only if the particular practice . . . is specifically permitted, prohibited, or regulated." *Miller*, 865 P.2d at 420 (citing *Vogt*, 817 P.2d at 1370).

---

[1] Bracketed numbers refer to docket entries and are followed by page and / or paragraph number citations. Page numbers refer to the ECF page number.

But even with guidance from those cases, there are strong arguments on both sides of the state law question. The Food and Drug Administration (FDA) has a monograph detailing the federal requirements for labels of antitussives. 21 C.F.R. § 341.74. A common active ingredient in antitussive medication is dextromethorphan hydrobromide, or DXM. When promulgating the monograph, the FDA recognized scientific literature that "describes slight drowsiness as a side effect for . . . dextromethorphan preparations." But "[t]he Panel made no mention of drowsiness in its discussion of dextromethorphan." And "the agency is not aware of data demonstrating that the antitussive ingredient[] . . . dextromethorphan . . . require[s] a drowsiness warning." 48 Fed. Reg. 48576-01, 48589 (1983). Thus, the relevant monograph requires some warnings on products containing DXM, but it does not require a drowsiness warning. *See* 21 C.F.R. § 341.74(c)(1)–(3), (c)(4)(v)–(vi). The monograph also requires a drowsiness warning for products containing other active ingredients, but not DXM. *See id.* § 341.74(c)(4)(vii)(B), (c)(4)(ix)(B).

On one hand, under *Miller* and *Vogt*, the defendants could argue that because the FDA considered drowsiness when writing the relevant monograph and declined to require any kind of drowsiness warning on the label, that makes the "particular practice" of using the phrase "non-drowsy" on the label "specifically permitted." Further, like the banking regulations at issue in *Miller*, the FDA has the authority to resolve the issues before the court, it has special competence over drug labeling, and there is a pervasive drug-labeling scheme administered by the FDA. *Cf.* 865 P.2d at 421–22. On the other hand, the plaintiff could argue that the FDA only "specifically permitted" drug makers to *not* place an explicit "drowsiness" warning on the labels of antitussives containing DXM; the agency did not by implication "specifically permit" the phrase "non-drowsy" to appear on the labels.

Thus, under Washington law, it is unclear whether the FDA has "permitted" drugmakers to affix a label containing the phrase "non-drowsy" to antitussives containing DXM.

The answer to this state law question is outcome determinative. If defendants' labeling decision falls within the statutory safe harbor, then the plaintiff has not stated a claim and the case must be dismissed. However, if the labeling decision does not fall within the safe harbor, the court has concluded that the claim is not preempted, and at minimum, the claims for legal relief under Washington law can go forward.[2]

---

[2] Under 21 U.S.C. § 379r(a)(2), states cannot impose additional or different requirements than the FDA for labeling over-the-counter drugs. At least four other district courts have considered the exact preemption question here: whether plaintiffs can use state law to *prohibit* (not require) manufacturers from placing the phrase "non-drowsy" on the label of a DXM-containing antitussive. Order at 5–7, *Carrigan v. Bayer Healthcare LLC*, No. 2:22-cv-3780 (D.N.J. May 24, 2023), ECF No. 31 (not preempted); *Lemus v. Rite Aid Corp.*, 613 F. Supp. 3d 1269, 1275–76 (C.D. Cal. 2022) (not preempted); *Goldstein v Walmart, Inc.*, No.

3

* * *

The following question is certified to the Washington Supreme Court:

Under the Revised Code of Washington § 19.86.170, is labeling as "non-drowsy" an over-the-counter antitussive containing dextromethorphan hydrobromide an "action[] . . . permitted by . . . [a] regulatory body . . . acting under statutory authority . . . of . . . the United States" such that this labeling decision falls within the statutory safe harbor?

The phrasing of the question is not intended to restrict the Washington Supreme Court's consideration of this issue, and it may reformulate the question as it sees fit. *Cothron v. White Castle Sys., Inc.*, 20 F.4th 1156, 1167 (7th Cir. 2021); *Potter*, 46 F.4th at 793.

The Clerk of the Court is directed to transmit to the Washington Supreme Court this order and request for certification along with copies of all relevant briefs and excerpts of record pursuant to the Revised Code of Washington §§ 2.60.020 and 2.60.030.

If the Washington Supreme Court accepts the certified question, the court designates plaintiff Tracy Hall to file the first brief pursuant to Washington Rule of Appellate Procedure 16.16(e)(1).

All proceedings in this court are stayed pending the Washington Supreme Court's decision to accept review, and if it accepts the question, its answer to the question. The Clerk of Court is directed to administratively close the case pending a response from the Washington Supreme Court. Any party may move to lift the stay and reopen the case at any time. The parties should file a joint status report by November 13, 2023, or within seven days of the Washington Supreme Court's decision whether to accept review, whichever is sooner.

Dated: August 14, 2023 /s/ Martha M. Pacold

---

22-cv-88, 2022 WL 16540837, at *4–12 (S.D.N.Y. Oct. 28, 2022) (preempted); *Amara v. Publix Supermarkets, Inc.*, No. 8:22-cv-367, 2022 WL 3357575, at *3–5 (M.D. Fla. Aug. 15, 2022) (preempted). The court agrees with the analyses in *Carrigan* and *Lemus*. Because Hall does not seek to *require* anything different than the FDA, only to *prohibit* the use of a phrase of which the FDA has not explicitly approved, her state law claims are not preempted.

4